DOWNING *v.* CITY OF JACKSON *et al.*

(In Banc. Jan. 28, 1946. Suggestion of Error Overruled, March 11, 1946.)

[24 So. (2d) 661. No. 36011.]

G. Q. Whitfield and Lamar F. Easterling, both of Jackson, for appellants.

466

**Butler & Snow**, of Jackson, for appellees, Sam Soliman and Carl Sadelmeyer.

470

Wm. **Harold Cox**, of Jackson, for appellee, City of Jackson.

472

Argued orally by **G. Q. Whitfield**, for appellants, and by **Wm. Harold Cox**, for appellees.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

This case was tried in the Circuit Court of the First Judicial District of Hinds County on the declaration of the appellant, Mrs. Lena H. Downing, in an action for damages against the City of Jackson and Sam Soliman and Carl Sadelmeyer, doing business as Royal American Shows. At the end of the introduction of all the evidence, the trial court granted instructions to the jury peremptorily to find for all the defendants, appellees here.

The pertinent facts on the controlling question in the case are the only ones necessary to detail here. Appellee, City of Jackson, was operating in October, 1944, the Mississippi State Fair at the Fair Grounds near Jackson, pursuant to the authority of Chapter 340, Laws 1938. Appellee, Royal American Shows, was a concessionaire at the Fair. Upon reaching the City of Jackson, it was unable to arrange with private persons to transport its equipment from the train to the Fair Grounds. As the City had performed this service for it in 1943, one of the copartners, on behalf of Royal American Shows, arranged with the City, through Mr. Martin, building inspector and in charge of the Fair Grounds for the City, to deliver its equipment at the place of exhibition and operation of the concession on the Fair Grounds. The arrangement required the trainmaster of the Royal American Shows to unload from the train a considerable number of laden

trailers belonging to Royal American Shows, and upon doing so the City was required to tow them to their destination over the streets of Jackson. The connection of the Royal American Shows with this transportation transaction ceased upon the unloading above stated, except that it was to, and did, pay the City charges for the service upon the rendition of the bill by the City.

Upon such unloading of said trailers by the shows on Rankin Street in the City of Jackson, it then became the duty of the City to provide the means of transportation, as stated. In order to perform this task, Mr. Martin instructed Mr. Wright, Superintendent of Streets for the City, to utilize enough city tractors with drivers, employees of the City, to accomplish it. This was done, and among the city drivers was Gehrod B. (Jack) Downing, whose widow is plaintiff below and appellant here. Mr. Downing was assigned the hauling of one of the trailers which, with its contents, weighed several thousand pounds. This trailer had four wheels plated with solid rubber and a "tongue with a piece of grab iron on the top and on the bottom, with two holes in it, and then a pin that goes down through the two holes that connects the tractor, with a cotter pin at the bottom."

After the trailer was attached to the City's tractor, of which Mr. Downing was the driver for the City, he started to the Fair Grounds. Both he and Mr. Wright knew the trailer had no brakes of its own or in connection with the tractor, operable from the tractor. When about one hundred and fifty feet south of the intersection of South State and South Streets, the connection was broken. There is some conflict in the evidence as to how it happened. Mr. Downing was slowing down, apparently for the traffic light. There is no claim that he was violating any speed law. The tractor slowed, but the trailer did not slow down; it climbed on the tractor and the trailer tongue struck Mr. Downing in the back over the left kidney, causing the injury from which he died some

weeks later, according to appellant, which claim was denied by appellees to be the cause of his death.

The trailer had no brakes thereon as required by subsection 3, Section 8249, Code 1942, as follows:

"3. Every trailer carrying over one ton, when operated upon a highway, shall be equipped with brakes, adequate to control the movement thereof and to stop and to hold such vehicle, and so designed to be applied by the driver of the towing motor vehicle from its cab; said brakes shall be so designed and connected that in case of an accidental breakaway of the towed vehicle, the brakes shall be automatically applied."

Section 8277, Code 1942, provides that every "person who commits, attempts to commit, conspires to commit, or aids or abets in the commission of, any act declared herein to be a crime, whether individually or in connection with one or more other persons or as a principal, agent, or accessory, shall be guilty of such offense."

The trailer was operated by Mr. Downing for the City at the direction of an authorized representative of the City, without coersion. At the time both knew that the trailer was not equipped with any brakes. Both appellant and appellees base their position in this case on the claim that the trailer was operated in violation of the statute at the time of the injury to Mr. Downing. Section 8275, Code 1942, sets out the penalties for violations of the statutes.

Section 8278, Code 1942, under the chapter on Motor Vehicles, provides: "It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law."

The declaration alleges that "the authorized representative of the City of Jackson directed the said Downing to drive the said road tractor after it was attached to the said trailer, and to pull said trailer from the railroad siding to said Fair Grounds, and in obedience to the

command of his superior officer, he did so, and towed trailer east on Rankin Street, north on South State Street to about 200 or 250 feet of the intersection of South and South State Streets, when for some reason the said Downing undertook to slow down or to stop the said tractor, and *because of lack of brakes on said trailer behind* (Italics ours) the said trailer kept coming until it ran upon the body of the said tractor, turned it around in the street, and the tongue of said trailer became disconnected from the tractor . . . and knocked him off, onto the ground in an unconscious condition.''

Mr. Downing died at a hospital in Jackson several weeks later, in November, having, in the meantime, returned to work for the City at this same type of employment as before the accident.

The principal defense of the City of Jackson is that since it was the duty of said City not to operate said trailer over the highway without brakes as required by the statute, supra, and also a similar duty was incumbent upon Mr. Downing under the same statute, and that both violated the statute, appellant, as the sole heir at law of her husband, the deceased Downing, cannot recover. In other words, the City and Mr. Downing were in pari delicto. In answer to this contention, appellant argues that her deceased husband's contribution to his death by his participation in this violation of law does not bar her, as his only heir at law, from prosecuting this action, but only diminishes the amount recoverable accordingly, in view of the Comparative Negligence Statute, Section 1454, Code 1942. The conclusion we have reached on this issue will dispose of the case and render unnecessary discussion of any other features of it.

Appellant's case is founded solely upon absence of brakes on this equipment, as required by law, and the application of the rule of comparative negligence, citing as to the latter, Gulf & Ship Island R. Co. v. Saucier, 139 Miss. 497, 104 So. 180, and other cases where decisions were based on negligence. But here we do not reach

negligence, in our opinion, which view we discuss, post. As to the former point—the absence of brakes on the trailer—which condition was known to both the City's representative and Mr. Downing, the deceased city driver, so that both were involved in the same violation of the criminal statute in operating the trailer on the highway, appellant cites E. L. Bruce Co. v. Bramlett, 188 So. 532, where this Court affirmed a judgment against appellant for damages to appellee, whose negligence, it was said, to a large extent contributed proximately to the injury, in that appellee was driving a truck without any brakes, and in violation of a 30-mile speed limit for trucks, in nighttime, while crossing three bridges in a creek bottom on a road which was a fill. This case cannot serve appellant for two reasons: (1) It does not disclose the circumstances of the case enough to furnish a sufficient parallel to the case at bar, and (2) because an examination of the file reveals that the effect of violation of criminal statutes on the right of action by plaintiff, in which violation he was joined by defendant, was not presented to the court for decision. Appellant also cites Wheat v. Wheat, 162 Miss. 595, 139 So. 849, which, in our judgment, is not in point on the precise issue upon which our decision must turn.

Conceding, for the sake of the discussion, that Mr. Downing's death was proximately due to the injury received in the accident, supra, it must also be conceded that his widow's claim for relief is founded upon his violation of a penal statute, making it a crime to operate this trailer on a highway without brakes. The fact that he (without protest and without compulsion) obeyed the orders of his superior in the employment of the City of Jackson cannot avail him. As we said in Western Union Telegraph Co. v. McLaurin, 108 Miss. 273, 66 So. 739, 740, L. R. A. 1915C, 487: ''If a plaintiff cannot open his case without showing that he has broken the law, a court will not aid him. It has been said that the objection may often sound very ill in the mouth of the defendant, but

it is not for his sake the objection is allowed; it is founded on general principles of policy which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or illegal act." The decision then quotes from the work of Judge Cooley on Torts that ". . . Whoever, by his pleadings in any court of justice, avows that he has been engaged with others in an unlawful action, or has concerted with them in an unlawful enterprise, and that in arranging for or carrying it out he has been unfairly treated by his associates, or has suffered an injustice which they should redress, will be met by the refusal of the court to look any further than his complaint, which it will at once order dismissed." See Capps et al. v. Postal Telegraph-Cable Co. (Miss.), 19 So. (2d) 491; and Labatt's Master and Servant, 2d Ed., Vol. 3, sec. 1278, p. 3569, where the rule is laid down that: "There can be no question that, where a servant's injury was proximately caused by the fact that he was violating a statute or municipal ordinance, the meaning and effect of which was perfectly clear, he cannot recover damages."

The Supreme Court of Georgia declared that "It would be contrary to public policy for courts to relieve a citizen of the consequences of his act in violating the law or his duty to society, and it cannot be any defense that someone else either assisted in the offense or commanded him to do it." Little v. Southern Railway Co., 120 Ga. 247, 47 S. E. 953, 955, 66 L. R. A. 509, 102 Am. St. Rep. 104. To the same effect is 39 C. J., sec. 423, pp. 296, 297, and 35 Am. Jur., sec. 239, pp. 672, 673.

In view of what is said supra, we are of the opinion that appellant was barred from any right of action in this case in view of the violation of law in the doing of the things which caused the accident, by her husband, for whose death, in consequence thereof, she sued. The peremptory

478

instructions for appellees were correctly granted by the trial judge, as to all the appellees here, defendants there.

There are other reasons why there is no liability to appellant on the part of the Royal American Shows, but it is not necessary to discuss them, as to do so would unnecessarily prolong this opinion.

Affirmed.